George L. Meffley, Sr. v. Commissioner.
Meffley v. Commissioner
Docket No. 57061.
United States Tax Court
T.C. Memo 1957-178; 1957 Tax Ct. Memo LEXIS 73; 16 T.C.M. (CCH) 794; T.C.M. (RIA) 57178; September 23, 1957
*73 Petitioner and his wife were members of a partnership acting as a sales agency for a manufacturing organization. Petitioner made separate cash gifts to each of his four children and within approximately two weeks a limited partnership agreement was executed to include petitioner, his wife, and his four children. The children used their cash gifts as capital contributions to the partnership enterprise. Held, the parties to the partnership intended in good faith to join together with a business purpose in the present conduct of a business, as partners. Charles H. Haines, Jr., Esq., and Morrison Shafroth, Esq., Equitable Building, Denver, Colo., for the petitioner. Martin G. Dumont, Esq., and William H. Welch, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: The respondent determined deficiencies in income tax against petitioner, George L. Meffley, Sr., as follows: Calendar
Year
Deficiency
1944
$44,294.24
1945
41,003.66
1946
58,153.28
1947
40,420.24
The issues presented for determination are (1) whether petitioner was joined together with his wife and four children in a bona fide partnership *74 known as George L. Meffley & Company for Federal income tax purposes for the taxable years before us, and (2) whether the income reported by such partnership was in reality the income of the partnership or the individual income of the petitioner. Findings of Fact Some of the facts have been stipulated and are found accordingly. The petitioner is an individual, residing in Littleton, Colorado. He was a resident of Colorado during 1944 to 1947, inclusive, the taxable years before us, and timely filed his individual income tax returns for each of said years with the then collector of internal revenue for the district of Colorado. Petitioner and his wife, Mable G. Meffley, hereinafter sometimes referred to as Mable, were married May 30, 1917. Their children in order of age are: Georgia Gail Meffley Dahman, hereinafter referred to as Gail, born January 19, 1919; William Meffley, hereinafter referred to as William, born December 30, 1920; George L. Meffley, Jr., hereinafter referred to as George, Jr., born February 16, 1924; and Gloria Meffley Wunderwald, hereinafter referred to as Gloria, born September 28, 1927. In 1922 petitioner went into the equipment business as a salesman *75 for H. W. Moore Company, and its successor corporation, the H. W. Moore Equipment Company, both of which will sometimes be referred to as the Moore Company. The Moore Company was a distributor of construction and maintenance equipment. In 1926 petitioner became general manager, vice president and a 51 per cent majority stockholder of Moore Company. In 1936 petitioner gave approximately one-half of his stock interest in Moore Company to his wife, Mable, in return for the assistance she had rendered the petitioner in his business affairs. Petitioner properly reported the gift for gift tax purposes in 1936. In 1929 petitioner became interested in the development of a lightweight power shovel which could be mounted on trucks for mobility and versatility. The truck shovel was proposed and designed by Luke Smith, who, with John H. Jay, formed a partnership, "Quick-Way" Truck Shovel Company, hereinafter called "Quick-Way", to manufacture the shovel. On March 5, 1935, "Quick-Way" granted petitioner, for Moore Company, the exclusive right to sell the shovel to all Federal government agencies for a period of five years beginning on January 1, 1935. The first eight truck shovels to be manufactured *76 were sold by petitioner for the Moore Company. The proceeds from the sales were the property of the Moore Company and were accounted for as such. In 1941 it was decided that petitioner and his wife should divorce themselves from the Moore Company and devote full time to acting as sales agents for "Quick-Way". They therefore had all of their stock redeemed by the Moore Company in December 1941 and thereafter retained no interest therein. In severing connections with the Moore Company it was necessary for petitioner to meet guaranties he had made to a bank for the Moore Company in the sum of approximately $95,000. Mable joined petitioner in executing notes to the bank for this sum. Subsequently Mable joined with petitioner in borrowing additional funds for the promotion of the sales business. On January 2, 1942, petitioner and his wife, Mable, executed a partnership agreement for the sale of equipment under the exclusive sales contract with "Quick-Way". Through the year 1942 the business of sales representative for "Quick-Way" was conducted as a partnership by petitioner and Mable. Petitioner had always wanted his children to be in business with him. In the latter part of 1942 *77 it was decided to form a new partnership to include himself, his wife, and his four children, to take over the sales work of "Quick-Way". Petitioner, on December 28, 1942, gave a check in the amount of $4,000 to Mable and each of the children. Each of the children expressed a desire to invest this money in the proposed partnership. On January 11, 1943, a certificate of limited partnership was signed and acknowledged by the parents and each of the four children. On January 13, 1943, the certificate was recorded. Each of the children invested the $4,000 gift in the partnership. Petitioner and Mable were listed as general partners and the four children were listed as limited partners. The name of the partnership was George L. Meffley & Company, hereinafter referred to as the Company. The Company operated under that name in many transactions with outsiders during the years in issue. The partnership agreement provided that the general partners should be entitled to receive reasonable compensation for their services and the balance of the profits was to be divided equally, or one-sixth of the net profits to each general and limited partner. The Company has operated as such a partnership *78 from the date the agreement was signed on January 11, 1943 to the date of this trial. The partnership has been recognized as such for tax purposes by the respondent since January 1, 1948. On July 15, 1943 a new sales agreement was entered into between "Quick-Way" and the Company. Under this agreement the general partners were required to devote full time to the interest of "Quick-Way" in securing government business and commercial dealerships. In July 1944, this contract was modified to be extended for the duration of the war and some other changes not pertinent hereto were made. The Company had all of the sales responsibilities of "Quick-Way", all expenses of advertising, promotion, travel, and all other expenses incidental to the promotion of and sales of "Quick-Way" shovel trucks. The entire output of "Quick-Way" was devoted to military requirements during the war, but the Company devoted time and money toward securing dealers or distributors for post war sales. In 1945 "Quick-Way" decided to form its own sales organization at the expiration of its contract with the Company and so informed the Company on January 1, 1946. In the latter part of 1946 the Company and "Quick-Way" *79 agreed to terminate the sales contract. Pursuant to the agreement, "Quick-Way" paid the Company $100,000 in each of the years 1946 and 1947, and the Company, on January 10, 1947, released all claim to any rights accrued or accruable under the previous sales contract or contracts. During the existence of the sales contract between "Quick-Way" and the Company, the Company was prohibited from representing any one else as a sales agency. When it became apparent that this contract was coming to an end, a corporation was formed in early 1946 to act as a sales agency for the Coleman Motors Corporation, which manufactured Coleman trucks. This corporation was formed by the son of petitioner, William, and Mack Dahman, petitioner's son-in-law. The name of the corporation was Co Lo Co., Inc. Each of petitioner's children withdrew $4,000 from the Company to invest in Co Lo Co., Inc. This corporation operated for approximately a year when it was dissolved after the Company had severed all connection with "Quick-Way" and the decision had been reached by the Company to make a substantial investment directly in Coleman Motors Corporation. From the beginning of petitioner's business career, Mable *80 has been an indispensible asset. She aided petitioner, not only as a wife ordinarily would, but as an informal business partner. In 1942, she became a formal partner with petitioner in the sales agency. She performed valuable services for the Company during the years in issue by aiding in demonstrating the truck shovel to various groups and preparing and presenting bids for Government contracts, and in the general administration of the Company when the petitioner and Mable were on tour for business purposes. She joined petitioner in executing notes in order to borrow money for Company business. When at home, among other things, Mable aided in entertaining potential customers and participated in informal conferences and decisions with other members of the Company concerning business matters. The children of petitioner were also active in Company business in varying degrees during the years in issue. Gail, among other things, worked at varying times as secretary and bookkeeper for her father when he was in Denver. When he was away on busniess, she was available to him by telephone to assist him if needed in obtaining information necessary to the preparation and submission of bids for *81 military contracts. Gail is still a partner in the Company. William entered the Service in October 1942 but was stationed in Denver until March of 1943. He was present when the partnership was formed. William had worked in his father's business prior to the formation of the Company and was familiar with the work. He, and all of the children, were consulted and expressed opinions concerning partnership business. While William was away from Denver, business affairs were discussed by letter. Upon his return from the Service, William took part in the formation of Co Lo Co., Inc. in the promotion and sales of Coleman trucks. After the Company invested in Coleman Motors Corporation, William, in 1947, worked for that corporation. William is still a partner in the Company. George Meffley, Jr. entered college in the fall of 1942 and entered the Service in February 1943. He had performed some week-end and holiday services for the petitioner prior to entering the Service. He was also consulted by word and by mail concerning business affairs of the Company. Immediately upon his return from the Service, George aided petitioner on a tour concerning Company business. Shortly thereafter he began *82 work for Co Lo Co., Inc. In 1947, George worked for Coleman Motors Corporation. George is still a partner in the Company. Gloria Meffley was only 15 years of age when the Company was formed. She attended school in Illinois from September 1945 to June 1947 and was home only on vacations. She participated in family discussions as to the business and is still a partner in the Company. Books of account were maintained by the Company in accordance with the partnership agreement. As of December 31 of each of the years 1943 through 1947, the capital accounts of the general partners and the limited partners were shown to total $10,000 and $16,000, respectively. The books also indicated the distribution of company income which was substantially as provided in the partnership agreement. For the most part, the income of the Company as distributed on the books of the Company, was retained in the business or used for Company investments. Some withdrawals were made by petitioner's children and certain amounts were withdrawn to pay income taxes of the individual members of petitioner's family. The family members were consulted as to investments of the Company. The Company filed partnership *83 returns of income in each of the years in issue. Petitioner, his wife, and each of their children filed income tax returns for each of the years in issue and paid the taxes due thereon from the distributions of income from the Company. The parties to the partnership intended, in good faith, to join together with a business purpose, in the present conduct of an enterprise and the income attributed to the Company was earned by the Company. Opinion The question here is whether George L. Meffley and Company was a bona fide partnership for Federal income tax purposes for the years 1944 to 1947, inclusive. It is the law that individuals carrying on business in partnership shall be liable for income tax only in their individual capacity upon their distributive share of the partnership income. Sections 181 and 182 I.R.C. of 1939. But there must be a bona fide carrying on of the business in partnership by all of the individuals for the tax years in question before it can be said all of the income that the business produced can be divided up into distributive shares. In short, if there is not a good faith partnership, then the income will be taxed to the one who earned it. The issue here *84 is whether there was a good faith partnership in the tax years in question, such as to warrant the splitting up of the income of Meffley and Company into distributive shares, as was done, or whether there was not a good faith partnership and all of the income of Meffley and Company for said years should be charged to petitioner George L. Meffly, as respondent contends. The question whether there was a bona fide partnership is one of fact and the burden is upon the petitioner here for respondent has determined there was not a bona fide partnership. It is a question that is to be resolved upon a consideration of all of the facts designed to show the intent of the individuals whom it is contended were individuals carrying on a business in partnership. In all partnerships there must be an agreement or contract between the individuals asserted to be members and, of course, there must be the contribution of either capital or services by the individuals. But it is not enough that there is the outward appearance of an arrangement or contract between individuals to engage in a common enterprise, such as the certificate of limited partnership in this case, signed by all of the members of *85 the Meffley family in 1943. In Commissioner v. Culbertson, 337 U.S. 733, it was held: "The question is * * * whether, considering all the facts - the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent - the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. * * *" We have given careful consideration to all of the evidence of manifestation of intent of the individuals concerned and we have determined that the members of the Meffley family, were, in the years 1944 to 1947, inclusive, individuals carrying on business in a bona fide partnership. We will review some of the evidence that leads us to that determination. Some of the facts and circumstances present in the years before 1944 can be briefly mentioned. Here we note a family partnership consisting of petitioner and his wife was in existence up until 1943 *86 and it carried on substantially the same business of sales of "Quick-Way" truck shovels. The Meffley family was a closely-knit family group and in the days when petitioner was the majority stockholder in H. W. Moore Equipment Company there seems to have been a family plan that the children would work in the family business as they grew old enough to work. Gail, who had learned clerical and secretarial work, was working full time with H. W. Moore Equipment Company in 1938 and William started working there after school and on holidays when he was 16 years old. He worked through various departments and finally became a full-time salesman. His younger brother, George, Jr., also worked some at H. W. Moore Equipment Company. Gloria, who was only 14 when her father sold out his stock in H. W. Moore Equipment Company in 1941, seems to have had no assigned duties with that company but she occasionally helped out with such chores as stuffing envelopes with circulars. It is also of some interest to note that the respondent recognized the family partnership of Meffley and Company in the years after the years in question. It was stipulated as follows: "Respondent recognized the alleged partnership *87 of George L. Meffley & Company for 1948 and subsequent years because, among other reasons, he determined (though petitioner does not concede) that there was a change in the character of the business, the alleged limited partners took a more active part in the business, and capital became an important income-producing factor." We turn now to the very years in question here, 1944 to 1947, inclusive, and the question of whether the members of the Meffley family were, during those years, individuals carrying on business in a bona fide partnership. Two items of documentary evidence are important. First there is the signed certificate of limited partnership and then there is the contract made with the partnership and "Quick-Way". While the written agreement of partnership is not conclusive, it is a circumstance to be considered. Then, too, the record shows that when this certificate of partnership was executed in 1943, petitioner was advised by his accountant that a tax disadvantage would result for that year because of the Current Tax Payment Act of 1943. The contract with "Quick-Way" provided that the general partners (petitioner and his wife) of Meffley and Company devote "full time *88 * * * to the promotion and development of sales of 'QUICK-WAY'" products and "dealers agencies" and that the partnership of Meffley and Company "pay for all such advertising, promotion, development, travel, and all other expenses incidental to the promotion and development of the sales of" the "Quick-Way" products. In conjunction with this contract there is the testimony of Luke Smith who executed the contract for "Quick-Way". He said his company recognized the importance of gaining more than the personal services of petitioner as a salesman. He characterized the work required of the George L. Meffley & Company as an independent sales department of "Quick-Way" that paid its own advertising, travel, and promotional expenses. There is present here the testimony of all six individuals as to their intention at the time of the execution of the partnership agreement. There is much testimony of family councils and repeated statements of a desire to have a family business association, by all of the members of the Meffley family. There is no reason to discount this testimony. Cf. Green v. Arnold, 87 Fed. Supp. 255, aff'd per curiam 186 Fed. (2d) 18. The testimony *89 is that the decision to sell out H. W. Moore Equipment Company stock and substitute a family partnership was a family decision. The sale of the Moore stock lost employment opportunities to the children in what they all seemed to consider a family business since petitioner and his wife owned a controlling common stock interest. It seems consistent that the members of the family would be anxious to secure, by some arrangement, employment security in the new business. Mable and at least three of the children had acquired skills helpful to the furtherance of the partnership business. The respondent argues that no business purpose was served by the formation of the partnership. The evidence was uncontradicted that it was petitioner's desire to make the business a family enterprise so that the business might continue. In other words, he wanted the children to participate in the business and he thought the best way of guaranteeing this was to make them a part of the business. Such reasons have been determined to be valid reasons. Theodore D. Stern, 15 T.C. 521. In Nicholas v. Davis, 204 Fed. (2d) 200, it was stated of such a purpose: "The second and third partnerships *90 were formed for a legitimate, and, indeed, a commendable business purpose. It was to continue the business as a family enterprise, * * *." The respondent seems to argue that because the members of the Meffley family have always been unusually close, and discussed business affairs prior to the formation of the Company, that such formation brought about no change in the family relationship and the partnership should not be recognized. This argument is without merit. The children were growing up. The oldest was approximately 24 years of age; the two boys were approximately 22 and 19 years of age, respectively; and the youngest was 15 years of age when the Company was formed. The two sons were about to go away to war. It seems the natural thing that petitioner should conclude that the children should be rewarded for the interest they had displayed in the family business, and that they be made a part of that business. The fact that the petitioner wanted to formalize what had prior thereto been an unusually close informal family arrangement, should not affect the validity of the partnership. Respondent also argues that the petitioner retained control of the partnership "by being a general *91 partner with his wife and by retaining his contract with 'Quick-Way' Truck Shovel Co. He retained control of the income as shown by its actual use, * * *." Speaking of the control of a business exercised by a general partner, we stated in Theodore Stern, supra: " He retained entire control in himself but that is of no particular significance since limited partners normally have no part in the control or management of the business. * * *" It also may be noted here that we have found that petitioner did not exercise entire control of the business but consulted each member of the family on Company business. As to respondent's argument that petitioner retained his contract with "Quick-Way", as a means of partnership control, suffice it to say that on July 15, 1943 the sales contract with "Quick-Way" was executed in favor of the Company as a limited partnership. The sales contract was retained by the Company until the settlement was reached terminating the contract on January 10, 1947. There is no evidence of record indicating that the petitioner controlled the income of the Company. Strict books of account were maintained showing the distributive shares of each partner. *92 It is true that, for the most part, the income of the Company was used in the business or used for Company investments, but the evidence presented indicates that such decisions were reached by family conferences. The respondent relies heavily on his argument that capital was not an income-producing factor and that none of the partners, except for the petitioner, rendered any vital services to the partnership in the years before us. As to capital and services contributed by a partner, it was stated in Commissioner v. Culbertson, supra, that "The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard * * *." The Court, by this and other language in the opinion, held that the services did not have to be "vital", nor did the capital have to be "original." The capital and/or services contributed are to be considered along with other evidence of intent in determining the validity of the partnership. We have considered the capital and services contributed by each of the partners, and find that each contributed either capital or services, or both. True, the capital contributed by the limited partners *93 was gift capital, but the evidence is uncontradicted that each of the recipients of the gifts was free to invest in the partnership or not. In fact, Mable did not invest her gift in the partnership, but deposited it in her bank account. Of course it would matter little that one had contributed capital to a partnership if, as respondent argues, capital was not an income-producing factor in the business. In the instant case it seems obvious to us that capital was an income-producing factor. Much money was expended on entertainment, travel, advertising, mailing lists, etc. As previously stated, the Company's contract with "Quick-Way" provided that the Company would, "at its expense, pay for all such advertising, promotion, development, travel, and all other expenses incidental to the promotion and development of the sales * * *" made under the agreement. The Company did expend capital for these purposes and we cannot say that such expended capital was not an income-producing factor to the Company. The services of the family members of the partnership to the business unit need not be detailed. The services rendered by Mable to the business unit were extensive and respondent hardly *94 argues they were not. The two boys were in military service in 1944. They had rendered some service to the partnership in 1943 and when they returned from Service in 1945 they began to render some service to the partnership - William in sales and George, Jr. in setting up dealerships. However, George, Jr. returned to college in 1946 and most of the services of both boys in 1946 and 1947 was with respect to Co Lo Co, Inc. and the Coleman truck business - which was beginning to be the partnership business since the "Quick-Way" contract was terminated in 1946. The two girls were at home during the war years but Gloria was in either high school or away at college during all of the tax years involved. Gloria performed some small services on school holiday or vacation periods. Gail, throughout most of the tax years, acted as her father's secretary and had much to do with entertainment of business guests. In summary of the evidence with respect to the services performed by the parties, it can be said each served according to his or her abilities and opportunities. The absence of the boys in military service during the years in question would not preclude them from being partners. Commissioner v. Culbertson, supra. *95 The service performed by each was satisfactory to the others. Respondent seems to argue that, regardless of the bona fides of the partnership, the income reported by the Company was in reality earned solely by petitioner, and that under the doctrine expressed in Lucas v. Earl, 281 U.S. 111, all such income is taxable to him. We see no merit in the argument. The question of the ownership of income attributed to the Company has been resolved by our determination that the partnership is valid for tax purposes. We have found that the Company was not a one-man personal service affair. As such, capital and services other than contributed by petitioner, were essential to the Company, and were contributed by other members of the Meffley family. We have found the capital contributed was an income-producing factor to the Company, which, standing alone, completely negates respondent's argument that petitioner alone earned the income reported and distributed on the books of the Company. Viewing the record as a whole, we come to the conclusion that the members of the Meffley family intended in good faith to join together, with a business purpose, in the present conduct of a business *96 and that the income in issue was earned by the partnership and not solely by petitioner. Decision will be entered for the petitioner.